IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  14-cv-00982-LTB-KLM

WENDY L. PEDEN,

     Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

     Defendant.

_____

ORDER
_____

This matter is before me on the parties' motions for summary judgment; specifically:

1) Defendant's Motion for Summary Judgment filed by State Farm Mutual Automobile Insurance

Company ("State Farm")[**Doc #47**]; and 2) Plaintiff's Partial Motion for Summary Judgment

filed by Wendy L. Peden ("Plaintiff")[**Doc #46**].  Oral arguments would not materially assist me

in my determination of these motions.  After consideration of the parties' briefs and attachments,

and for the reason stated, I GRANT State Farm's motion seeking summary judgment in its favor

and, as a result, I DENY the relief requested in Plaintiff's partial motion.

## I. Background

Plaintiff incurred serious injuries during a car accident on November 10, 2012.  Plaintiff

and three other passengers were injured when the 1962 Volkswagen Van they were riding in was

involved in a single car accident caused by the driver, Terrill Graf.  After the accident, the driver

was charged with DUI, DWAI, DUID and vehicular assault while driving under the influence of

alcohol or one or more drugs or both.

Plaintiff's claims against the at-fault driver for bodily liability coverage were settled by State Farm Representative Matt Schultz on February 4, 2014.  Because the amount of her compensatory damages exceeded the liability settlement, Plaintiff made a claim to State Farm pursuant to the available under-insured motorists ("UIM") coverage.  UIM coverage, in the amount of $350,000, was available to Plaintiff through the policy on the VW Van and through her own policy with State Farm.

State Farm Representative Kristine Krist denied her claim for UIM benefits on February 27, 2014.  The reason provided for the denial was that State Farm believed that Plaintiff was "fairly compensated by payment of the $210,000 bodily injury liability settlement, as well as the $30,000 previously paid" in medical payments coverage.  State Farm indicated that it valued Plaintiff's claim at $272,474.76 for her medical bills, wage loss, general damages, and cost of tuition reimbursement.  State Farm then discounted that amount by 15% based on her assumption of risk in the accident.  In so doing, State Farm noted that "[i]t is our understanding that the occupants of the vehicle involved in the accident had consumed alcohol prior to the accident."  Thus, based on its evaluation of her damages ($272,474.76, deducted by 15% for assumption of risk, in the total amount of $231,603.55) State Farm concluded that Plaintiff was fairly compensated for the injuries she sustained as she had received $240,000 in liability benefits.  As such, State Farm was "not in the position to offer her a UIM settlement" in February of 2014. [Doc #54-8]

The policies at issue here require that when State Farm and its insured cannot agree on the amount of the compensatory damages that the insured is legally entitled to collect, the insured must file a lawsuit.  Therefore, following State Farm's denial of her UIM claim, Plaintiff filed

this lawsuit against State Farm in Mesa County District Court on February 27, 2014.  State Farm

removed the case to this Court on diversity grounds pursuant to 28 U.S.C. §1332(a), §1441 and

§1446. [Doc #1]  In her Amended Complaint, Plaintiff asserts claims for:  1) Breach of the

Insurance Contract; 2) Common Law Breach of Good Faith and Fair Dealing; and 3) Violation of

Colorado Revised Statutes §10-3-115 and §10-3-116. [Doc #28]

After Plaintiff filed this lawsuit, State Farm re-evaluated Plaintiff's UIM claim a year

after its initial denial, and made an offer of settlement in the amount of $179,660.01 on February

27, 2015, based on information subsequently provided by Plaintiff.  Although Plaintiff did not

agree to the settlement offer,  State Farm paid her the $179,660.01 on March 18, 2015.  Then, on

May 15, 2015, State Farm paid Plaintiff the remaining $170,339.99.  As such, State Farm has

now paid Plaintiff $350,000, which constitutes the full amount of the UIM benefits available to

her.  The parties have now filed the cross motions for summary judgment at issue here.

## II. Summary Judgment Standard

The purpose of a summary judgment motion under Fed.R.Civ.P. 56 is to assess whether

trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Fed.R.Civ.P.

56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to

interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.  The non-moving party has the

burden of showing that there are issues of material fact to be determined. *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party seeking summary judgment bears the initial responsibility of informing the court

of the basis for its motion, and identifying those portions of the pleadings, depositions,

interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Id.* at 323; *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992). Once a properly supported summary judgment motion is made, the opposing party must respond with specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed.R.Civ.P. 56(e).

The fact that the parties have filed cross-motions for summary judgment does not necessarily indicate that summary judgment is proper. *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997). Cross-motions for summary judgment are to be treated separately as the denial of one does not require the grant of another. *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

In its motion, State Farm seeks judgment in its favor on all of Plaintiff's claims on the basis that its actions in handling and paying her UIM claim were reasonable as a matter of law. Plaintiff, in her motion, seeks partial summary judgment in her favor in the form of a legal determination that the "covered benefit" – as set forth in §10-3-1116(1) – means the $350,000 UIM policy limit which has now been paid to Plaintiff.

### III. State Farm's Motion

I first address State Farm's motion in which it asserts that it is entitled to summary judgment in its favor on all of Plaintiff's claims on the basis that the undisputed facts demonstrate that the decisions made by State Farm with regard to Plaintiff's claim for UIM benefits were, based on the information it had at the time, reasonable as a matter of law.

## A.  Applicable Law

Colorado law provides that, due to the special nature of the insurance contract and the relationship which exists between the insurer and the insured, an insurer owes a common law duty of good faith and fair dealing, whose breach may give rise to a separate cause of action arising in tort.  *Baker v. Allied Property and Cas. Ins. Co.* 939 F.Supp.2d 1091, 1106-07 (D.Colo. 2013)(citations omitted).  "When an insured sues his or her insurer for bad faith breach of an insurance contract, the insured must prove that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either knowingly or recklessly disregarded the validity of the insured's claim." *Id.* at 1107 *(quoting Sanderson v. American Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).

In addition, Colorado also provides a statutory cause of action for unreasonable delay or denial of payment of claims.  *See* Colo. Rev. Stat. §10-3-1115(1)(a) & §10-3-1116(1).  These statutes provide that a first-party claimant may bring an action for fees, costs, and penal damages if his or her "claim for payment of benefits has been unreasonably delayed or denied." §10-3-1116(1). "[A]n insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." §10-3-1115(2).

The legal standard differs slightly between a common law bad faith claim and a statutory claim for unreasonable delay or denial of payment of a claim.  *Baker v. Allied Property, supra,* 939 F.Supp.2d at 1107; *see also Vaccaro v. American Family Ins. Group*, 275 P.3d 750, 760 (Colo. App. 2012)).  The only element at issue in a statutory claim is whether an insurer denied benefits without a reasonable basis, whereas a common law claim requires the additional proof of

the insurer's knowledge or reckless disregard as to the validity of an insured's claim. *Baker v. Allied Property, supra,* 939 F.Supp.2d at 1107.

The reasonableness of an insurer's conduct is "determined objectively, based on proof of industry standards." *Id.* (*quoting Goodson v. American Standard Ins. Co. of Wisconsin,* 89 P.3d 409, 415 (Colo. 2004)).   The fact that an insurer's reason for denying or delaying payment of a claim was "fairly debatable" weighs against finding that the insurer acted unreasonably. *Baker v. Allied Property, supra,* 939 F.Supp.2d at 1107 (citations omitted).   Furthermore, in cases where "an insurer maintains a mistaken belief that a claim is not compensable, it may still be within the scope of permissible challenge, even if the insurer's belief turns out to be incorrect." *Sanderson v. American Family, supra,* 251 P.3d at 1217.

For purposes of bad faith, the reasonableness of an insurer's conduct is evaluated under the circumstances that existed at the time. *Anderson v. State Farm Mutual Ins. Co.*, 416 F.3d 1143 (10th Cir. 2005)(*citing Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003) and *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996)). "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury.   However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro v. American Family, supra,* 275 P.3d at 759.

**B.  State Farm's Position**

State Farm argues that the undisputed facts demonstrate that it acted reasonably at the time it denied Plaintiff's UIM claim, as well as in its actions in subsequently paying the claim following its initial denial.   Specifically, State Farm maintains that the decisions it made were

supported by the information in its file at the time each determination was made – both at the time of the denial as well as at the time new information was provided.

State Farm first asserts that the information it had at the time it denied Plaintiff's claim on February 27, 2014, was as follows.  That Mr. Graf, the at-fault driver, told State Farm via a telephone conversation with Mr. Schultz (the Bodily Liability Adjuster) that the party on November 10, 2012 started at 1:00 pm, with Plaintiff and the other guests arriving between 1:30-2:00 pm.  Mr. Graf indicated that he had been drinking beer and margaritas for approximately 3 hours before the accident.  He stated that the injured parties got into the vehicle and did not object to going for a ride.  He further stated that all the injured parties were drinking prior to the accident. [Doc #52-2]

Following the accident, which occurred at about 4:12 pm, Mr. Graf was charged with vehicular assault while driving under the influence and reckless driving.  In addition, State Farm notes that the Injury Questionnaire form sent to Plaintiff's counsel indicated that the purpose of the trip was "Pleasure-Joyride" and Ms. Krist (the UIM Adjuster) testified that it was her usual course of action to consider this information when handling Plaintiff's claim.  As such, based on these facts, State Farm assessed Plaintiff's claim and denied her request for UIM benefits on the basis that her documented damages to date, reduced by 15% based on State Farm's assessment of her assumption of risk, was covered by the bodily injury benefits and medical payments coverage she had already received.

State Farm argues that it was only after its denial of Plaintiff's UIM claim, and the filing of this lawsuit, that Plaintiff indicated that she did not know that the driver was intoxicated and that she did not intend to go for a ride with him.  In addition, it was not known that Plaintiff was

a surgical candidate until after the filing of this suit.  Likewise, she did not present a future

substantial wage loss claim until this lawsuit was filed.  As this new information was obtained,

State Farm ultimately paid Plaintiff the maximum UIM benefit amount.  Thus, State Farm

maintains that it acted reasonably in its initial denial and its subsequent delay of payment of the

available UIM benefits to Plaintiff.

**C.  Plaintiff's Position**

Plaintiff argues, in response, that at the time State Farm denied her request for UIM

benefits it vastly undervalued her damages because the UIM Adjuster (Ms. Krist) failed to

adequately investigate her claim.  Specifically, she maintains that the UIM Adjuster knew she

had sustained serious injuries that would probably result in permanent impairment and adversely

affect her earnings capacity.  Although Plaintiff's initial demand letter did not quantify the

amounts, it noted her on-going post-injury symptoms, her inability to return to college, her pain

and suffering and her probable lost earning capacity resulting in a "substantial future loss of

income." [Doc #54-1]

Furthermore, she contends that if Ms. Krist had spoken to any of the witnesses, or

conducted any investigation at all, she would have learned that at the least there was conflicting

evidence as to whether the at-fault driver appeared intoxicated, as well as conflicting accounts

regarding whether the passengers thought they would be going for a ride in the VW Van (as

opposed to only looking at it).  For example, two other passengers (the Conards) both reported to

police, directly after the incident, that they did not expect for Mr. Graf to drive the VW Van and

they did not intend to go for a ride. [Doc #54-6]  Thus, Plaintiff argues that as of February 27,

2014 – the date State Farm denied her claim – Ms. Krist had not conducted any investigation, and

instead made every inference from the evidence against Plaintiff, resulting in an unreasonable undervaluation of her damages and assumption of the risk assessment.

Plaintiff further asserts that the initial evaluation of her UIM claim by Ms. Krist was, in essence, copied or incorporated from bodily injury evaluation made by Mr. Schultz, who was required to protect the interest of the at-fault driver, Mr. Graf, not Plaintiff. [Doc #52-1 & #52-4] Plaintiff argues that Ms. Krist initially assessed her negligence at 0% (on January 3, 2014) but then assessed her assumption of risk at between 15% and 30% based on Mr. Schultz's determination of the bodily liability coverage.  Plaintiff notes, however, that at his deposition on March 25, 2015, Mr. Schultz indicated that he was only responsible for investigating the accident to the extent he need to in order to adjust the bodily injury liability claims against Mr. Graf, and, in so doing, only took a statement from Mr. Graf via telephone.  He did no further investigation except to obtain the accident report. He was not aware, at the time of his evaluation, that some of the passengers had reported to police that they did not know that Mr. Graf would take them for a ride. [Doc #52-1]  Plaintiff asserts that because of the availability of UIM benefits, Mr. Schultz was able to quickly settle the third-party bodily injury claims (of a limited amount) without extensive investigation.

Plaintiff further argues that it is undisputed that Ms. Krist had a duty to her to investigate Plaintiff's first-party UIM claim. [Doc #53-1]  With regard to the extent of Plaintiff's injuries, Ms. Krist admitted during her deposition testimony that Plaintiff' claim required a detailed analysis of her damages and that, as a first party claim, she has a duty to investigate the facts and evaluate the extent of the claim. [Doc # 52-4 & #53-1]  Plaintiff contends, however, that at the time of initial denial Ms. Krist had not done so.  Specifically, Plaintiff argues that with regard to

9

the reduction for assumption of risk, State Farm had not interviewed Plaintiff, the injured

passengers, or any witness, it had no obtained the accident reconstruction report from the State

Patrol, and it didn't visit the scene or inspect the vehicle.  Plaintiff notes that Mr. Graf did not

give a written statement to State Farm, and that the State Patrol's accident report reveals that

other passengers indicated that they never intended to go for a ride in the VW Van, but rather

only that they were going to take some pictures and look at the inside.  Plaintiff further asserts

that State Farm did not consult with any medical professional regarding Plaintiff's extensive

injuries, or whether such injuries were permanent, and failed to conduct any evaluation of her

future economic losses at the time of its denial. Both Mr. Schultz and Ms. Krist testified that if

they were aware that the passengers did not intend to go for a ride, they would have done more

investigation [Mr. Schultz at Doc #52-2] or would not have reduced the passengers' UIM claims

for assumption of risk [Ms. Krist Doc # 52-3].

   With regard to the Injury Questionnaire form, Plaintiff acknowledges that in response to

the question "What was the purpose of your trip business or personal? Where were you going?"

that form indicates that it was "Pleasure/Joyride." [Doc #54-4]   She contends, however, that this

information was not provided by her, and was not contained in her UIM claims file (but rather

was in Mr. Graf's bodily liability file). In addition, she maintains that it was irrelevant to an

assessment of her assumption of the risk as it did not address whether she intended to go for a

ride, and whether she knew that the driver was intoxicated.

   With regard to her assertion that State Farm unreasonably delayed payment of the UIM

benefits, following its initial denial and during the pendency of this litigation, Plaintiff first notes

that State Farm did not take any depositions until over a year after the filing of this lawsuit. Then,

after taking depositions in early February of 2015, Plaintiff again demanded payment of the UIM benefits.  At that time State Farm offered $179,660.01 as settlement of her UIM claim.  This amount was based on increased damages, but was again discounted by 15% for Plaintiff's assumption of risk.   Following Ms. Krist's deposition on March 13, 2015, Plaintiff again demanded payment of the entire amount of UIM benefits (of $350,000) or unconditional payment of the $179,660.01, based on State Farm's own policy to pay its initial offer of benefits. [Doc #55-3]  State Farm then forwarded payment of amount offered, $179,660.01, on March 18, 2015.

Plaintiff again demanded full benefits, in a letter from counsel dated March 30, 2015.  In this letter, Plaintiff provided an economic evaluation of her future loss of earnings of between $557,900 and $825,400. [Doc #55-3]  Thereafter, State Farm took Plaintiff's deposition on April 13, 2015. [Doc #53-4]  At that time Plaintiff indicated that she did not know that Mr. Graf was intoxicated at the party, that she only had one glass of wine before the accident.  While she remembers going outside to take pictures of the VW Van, she does remember going for a ride or how she came to be in the vehicle in the first place. At this point, State Farm paid Plaintiff the remaining amount of the UIM policy limits, in the amount of $170,339.99, on May 15, 2015. [Doc #47-4]

In sum, Plaintiff contends that a jury could find that: 1) when State Farm denied her UIM claim it vastly undervalued her damages because the UIM Adjuster failed to adequately investigate her claim (including her damages and her assessed assumption of risk); or 2) State Farm's delay in paying her over the course of the year of litigation, in which Plaintiff incurred the expense of retained experts in insurance practices and economic evaluation, was not reasonable based on the information State Farm knew, or should have known, about her UIM claim.

11

**D.  Ruling**

I agree with State Farm, however, that Plaintiff's claims for breach of contract and for common law bad faith breach and statutory unreasonable denial/delay in payment must be dismissed on summary judgment as the decisions it made in adjudicating her UIM claim were, at the time they were made, reasonable as a matter of law.

First, it is undisputed that at the time of the denial of the claim, State Farm's file contained no evidence that Plaintiff was an unwilling passenger in the vehicle, nor did it contain evidence that would refute the reasonable inference that she knew Mr. Graf had been drinking at the time he took the wheel.  Furthermore, State Farm's conclusion that she had been drinking and had agreed to go for a joyride with Mr. Graf, who was visibly intoxicated, was not – under the circumstances that were known at the time – in any way unreasonable.  State Farm was limited in its ability to obtain complete police reports due to the pending criminal charges against Mr. Graf.  Plaintiff does not dispute that prior to the denial Mr. Schultz asked for a statement from Plaintiff in March of 2013, and that she declined.  In addition, Mr. Schultz told Plaintiff's counsel in August of 2013 that State Farm believed that there was a significant assumption of the risk by the passengers, but there is no evidence that Plaintiff's counsel advised State Farm that Plaintiff was unaware that Mr. Graf was intoxicated and did not intend to go for a ride with him.

In addition, Plaintiff does not dispute that her future damages (both medical and lost earning capacity) were, at the time of denial, speculative; specifically, at the time of the denial Plaintiff was not a candidate for surgery and she had not made any claim for future wage loss.  In her demand letter dated January 31, 2014, Plaintiff does not provide any additional basis for her request for UIM benefits beyond "previously supplied" documentation in support of the demand.

It was not until after this lawsuit was filed that Plaintiff indicated that she would need surgery and that she was making a specific claim for future lost wages. Accordingly, I reject Plaintiff's argument to the extent she contends that State Farm's decision, at the time of its denial, was unreasonable based on its lack of investigation into the matter.

Furthermore, I find that the undisputed facts show that State Farm's delay in paying the UIM benefits after Plaintiff filed this lawsuit was reasonable as a matter of law. First, Plaintiff did not inform State Farm that she was a candidate for surgery until September 15, 2014, and she did not provide State Farm with relevant medical records regarding her surgery until January 13, 2015. Likewise, Plaintiff does not dispute that the first time that she indicated that she did not intend to go for a ride with Mr. Graf was the deposition of Ms. Krist on March 11, 2015. State Farm notes that it was this information that prompted it to increase her damages and, in turn, offer a settlement of her claim for a portion of the UIM benefits and then, when Plaintiff refused, to advance payment without condition. Finally, it was not until March 30, 2105 that Plaintiff disclosed an economic loss report calculating her future income loss and again, in light of this new information and its own expert evaluation, State Farm paid her the remaining policy limits a month and a half after receiving it. "[A] UIM insurer's liability in bad faith cases often turns on the reasonableness of its investigation and conduct during the claims handling process." *Toy v. American Family Mut. Ins. Co.*, 2014 WL 485952 (D. Colo. 2014)(unpublished)(*citing Baker v. Allied Property, supra*, 939 F.Supp.2d at 1110; *Sanderson v. American Family, supra*, 251 P.3d at 1220-21).

Therefore, I conclude that State Farm's conduct and decisions in evaluating Plaintiff's UIM claim in this case was, at each point, made with a reasoned basis and without reckless

disregard as to the validity of her claim. As such, based on the undisputed facts, I grant State Farm's motion seeking summary judgment in its favor as a matter of law. *See generally Vaccaro v. American Family, supra,* 275 P.3d at 759 (although reasonableness is ordinarily a question of fact for the jury, "when there are no genuine issues of material fact, reasonableness may be decided as a matter of law" in appropriate circumstances).

### IV. Plaintiff's Motion

In her cross-motion for partial summary judgment, Plaintiff seeks a legal ruling as it relates to her statutory claim for unreasonable delay or denial of payment of claims under §10-3-1115 & §10-3-1116. Specifically, she seeks a ruling that the "covered benefit" – as set forth in §10-3-1116(1) – means the $350,000 UIM policy limits that were ultimately paid to her by State Farm in this case. However, because I have ruled that State Farm is entitled to summary judgment in its favor on all of Plaintiff's claims, including her statutory claims, her motion seeking a legal determination as to her damages is no longer at issue. And, as a result, I deny her motion.

ACCORDINGLY, I GRANT Defendant's Motion for Summary Judgment [**Doc #47**] and I enter summary judgment in State Farm's favor on all Plaintiff's claims. In addition, I DENY Plaintiff's Partial Motion for Summary Judgment [**Doc #46**]. As such, I DISMISS this case and AWARD COSTS to State Farm.

Dated: September  9 , 2015,  in Denver, Colorado.

BY THE COURT:

 s/Lewis T. Babcock
Lewis T. Babcock, Judge