IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  14-cv-00982-LTB-KLM

WENDY L. PEDEN,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

      Defendant.

_____

# ORDER
_____

     This matter is before me on several pre-trial issues raised in Plaintiff's Amended Trial Brief [**Doc #156**] and in Defendant's Trial Brief [**Doc #153**] related to the admissibility of proffered evidence and potential arguments at trial.  As set forth on the record at the status/scheduling conference on July 13, 2018, I will treat these requests for pretrial rulings as motions *in limine* and, after consideration of the parties' briefs and responses, I rule as follows.

## I. Background

     Plaintiff Wendy Peden and three other passengers were injured when the 1962 Volkswagen van they were riding in was involved in a single car accident. Plaintiff's claims against the at-fault driver for bodily liability coverage were settled by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Because the amount of her compensatory damages exceeded the liability settlement,

Plaintiff made a claim to State Farm pursuant to the available under-insured motorists ("UIM") coverage of $350,000. State Farm concluded that Plaintiff was fairly compensated for the injuries she sustained, via the liability benefits paid, and thus it denied her UIM claim in February of 2014. Following State Farm's denial, Plaintiff filed this lawsuit asserting claims for: 1) Breach of the Insurance Contract; 2) Common Law Breach of Good Faith and Fair Dealing; and 3) Violation of Colorado Revised Statutes §10-3-1115 and §10-3-1116 (Unreasonable Delay or Denial of Benefits).

After Plaintiff filed this lawsuit, State Farm re-evaluated Plaintiff's UIM claim – a year after its initial denial – and made an offer of settlement in the amount of $179,660.01 on February 27, 2015. Then, on May 15, 2015, State Farm paid Plaintiff the remaining $170,339.99. As such, State Farm has now paid Plaintiff $350,000, which constitutes the full amount of the UIM benefits available.

On September 9, 2015, I granted State Farm's Motion for Summary Judgment and dismissed Plaintiff's case on the basis that State Farm's decisions made in adjudicating Plaintiff's UIM claim "were, at the time they were made, reasonable as a matter of law." [Doc #72] Plaintiff appealed and, on November 15, 2016, Tenth Circuit reversed and remanded. *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887 (2016). The Tenth Circuit ruled that a genuine issue of material facts existed as to whether State Farm adequately investigated whether Plaintiff knew that the at-fault driver was drunk and planning to drive (assumed the risk), and whether State Farm reasonably investigated the damages Plaintiff could obtain

2

against the at-fault driver (adequately investigated his liability to her). *Id.* at 891-92. The Tenth Circuit also indicated that a genuine issue of material fact existed as to "the reasonableness of State Farm's initial refusal to pay anything for future non-economic damages or future wage loss." *Id.* at 894.

Following remand, on December 14, 2016, I granted Plaintiff's Partial Motion for Summary Judgment in which she sought a legal ruling (as related to her Statutory Unreasonable Delay or Denial of Benefits claim under §10-3-1115 & §10-3-1116) that the "covered benefit" in §10-3-1116(1) means the $350,000 UIM policy limits that were ultimately paid to her by State Farm. [Doc #88]

On April 20, 2017, I dismissed Plaintiff's Breach of Contract claim. [Doc #96] And, on November 6, 2017, I dismissed Plaintiff's Bad Faith Breach of Contract Claim upon her Stipulation for Dismissal. [Doc #120] As a result, Plaintiff's only remaining claim is for Unreasonable Delay or Denial of Benefits in violation of §10-3-1115 and §10-3-1116.

## II. Plaintiff's Trial Brief

In her Amended Trial Brief, Plaintiff seeks rulings on the following potential defense arguments at trial. [Doc #156]

### A. Burden of Proof:

Plaintiff anticipates that State Farm will argue that it was obligated to pay Plaintiff's UIM claim only if Plaintiff met some burden or level of proof when presenting her claim. Plaintiff argues that the underlying insurance policy only requires her to give State Farm notice of the accident; it does not require specific

information to support her claim or impose any burden of proof.  Plaintiff asks that I prohibit State Farm from arguing (or implying) to the jury that its duty to investigate, evaluate and pay her UIM benefits were conditioned upon Plaintiff meeting some undefined burden of proof.  State Farm responds that the case law is clear that the party seeking UIM benefits has the burden to prove that he or she is entitled to those benefits.

State Farm is correct that Plaintiff (as the insured) has the burden in UIM breach of contract cases to prove liability and damages at trial.  *See e.g. Briggs v. Am. Family Mut. Ins. Co.*, 833 P.2d 859, 861 (Colo. App. 1992)(the insured has the burden to prove that the uninsured motorist was negligent and the extent of the damages).  Plaintiff's only claim in this case, however, is for Unreasonable Delay or Denial under §10-3-1115 & 1116 – her breach of contract and bad faith breach of contract claims have both been dismissed.  The jury instruction on her remaining claim requires only that Plaintiff prove, by a preponderance of the evidence, that State Farm 1) delayed or denied payment of benefits owed to her, and 2) that such delay or denial was without a reasonable basis. CJI-Civ 25:4.

In addition, I agree with Plaintiff that she did not have any burden to prove she was entitled to UIM benefits *at the time she filed her claim.*  The case law does not require that she prove anything before triggering State Farm's duty to investigate, evaluate and pay her UIM claim, and the insurance policy only requires that she give State Farm notice of her claim.  I conclude that while Plaintiff has the ultimate burden to prove, by a preponderance of the evidence, the elements of her

4

Unreasonable Delay or Denial claim, there was no burden imposed on her at the time she made her claim for UIM benefits. Therefore, State Farm may not argue or imply that Plaintiff was required to meet some requisite burden or level of proof when filing her claim for UIM benefits in order to trigger State Farm's duty to investigate, evaluate and pay her claim.

## B. Failure to Cooperate

Plaintiff also anticipates that State Farm will argue that she breached her contractual requirement to cooperate, under the insurance policy, when seeking her UIM benefits. Plaintiff asserts that: 1) State Farm's answer does not allege a failure to cooperate affirmative defense; and 2) State Farm's responses to discovery do not substantiate any failure to cooperate.

State Farm argues that it did in fact raise Plaintiff's failure to cooperate as an affirmative defense in its Answer at Paragraphs 10 & 11, which provided that:

> 10. Plaintiff's claims are barred, limited or proportionately reduced by the terms and conditions of the insurance policy issued by defendant including, but not limited to, the limits of the subject insurance policy.

> 11. Plaintiff's claims may be barred or reduced by any failure to satisfy conditions precedent to the right of recovery under the insurance policy issued by defendant. [Doc #8]

I also note that the Final Pretrial Order, dated August of 2015, indicated State Farm's position that "Plaintiff's claims may be barred or reduced by any failure to satisfy conditions precedent to the right of recover under the insurance policy." [Doc #71 pg. 4]

Plaintiff argues that State Farm's allegations in ¶10 & ¶11 of its Answer are insufficient to raise the affirmative defense of failure to cooperate. *See Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015)(declining to decide whether non-cooperation is an affirmative defense or a failure of a condition precedent because the insurer did not plead the issue of non-cooperation in its Answer with the requisite specificity). In response, State Farm notes that *Soicher v. State Farm* was not decided until after it filed its Answer in this case, and instead relies upon *Phoenix Ins. Co. v. Trinity Universal Ins. Co.,* 2013 WL 12106092 (D. Colo. Aug. 29, 2013)(unpublished)(finding that an Answer that avers that "Plaintiffs' claims may be barred, in whole or part, by express terms, conditions, limitations and disclaimers of any applicable contract" adequately raised the defense of non-cooperation).

I do not reach the issue of whether State Farm's Answer was sufficiently specific to raise the affirmative defense of failure to cooperate, because such defense would go to Plaintiff's contract claims which, as discussed above, have been dismissed. Since the only thing to be decided by the jury in this case is whether State Farm delayed or denied payment of benefits owed to Plaintiff and whether such delay or denial was without a reasonable basis, her alleged non-cooperation under the terms of the insurance policy does not act as an affirmative defense to State Farm's unreasonable delay or denial. While such evidence may be relevant to the reasonableness of State Farm's actions in its investigation and handling/paying Plaintiff's claim (and whether or not it was on notice of the facts related to whether

6

she assumed risk for the accident), it is not an affirmative defense to Plaintiff's

Unreasonable Delay or Denial claim, and the jury will not be instructed that it is.

### III.  State Farm's Trial Brief

In its Trial Brief, State Farm seeks rulings on the admissibility of potential

evidence proffered by Plaintiff.  The fundamental evidentiary issue is relevancy, as

relevant evidence is inadmissible and irrelevant evidence is inadmissible.  *See*

Fed.R.Evid. 401 and 402.  Relevant evidence is "evidence having any tendency to

make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence."

Fed.R.Evid. 401.  Federal Rules Evidence 403 provides that relevant evidence may

be deemed inadmissible, however, if its probative value is substantially outweighed

by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Fed.R.Evid. 403.  "Decisions on evidentiary matters lie within the sound discretion

of the district court and will not be disturbed absent a clear showing of abuse of

discretion." *Orjias v. Stevenson*, 31 F.3d 995, 999 (10th Cir. 1994).

### A.  Pre-Judgment Interest:

State Farm first asks for a ruling that prohibits Plaintiff from arguing at

trial that State Farm should have paid or taken into account Plaintiff's demand for

prejudgment interest (for the time period before State Farm paid Plaintiff's UIM

benefits) during its handling of her claim.  State Farm asserts that the law does not

require that an insurer "take into account" prejudgment interest when assessing

UIM claims citing *Munoz v. Am. Family Mut. Ins. Co.,* ___ P.3d. ___, 2017 COA 25

(Feb. 23, 2017, *cert. granted in part,* 2017 WL 3868023 (Colo. Sept. 5, 2017).

Plaintiff argues, in response, that State Farm ignored her request for pre-judgment interest during the handling of her claim, although she was entitled such interest citing *USAA v. Parker*, 200 P.3d 350 (Colo. 2009)(affirming the ruling that the UM/UIM insurer was liable to the insured "for prejudgment interest on his UIM claim at rate of nine percent per annum from the date of [his] accident," but not in excess of policy limits). *See also Carpenter v. Am. Family Mut. Ins. Co.*, 2015 WL 8529775 (D. Colo. 2015)(unpublished). As a result, Plaintiff contends that State Farm's "failure to consider this element of Plaintiff's pre-litigation demand" is relevant to the question of State Farm's reasonableness in paying her claim.

I first note that whether Plaintiff was entitled to pre-judgment interest (assessed from the time she made her claim until State Farm paid her the limits of the UIM benefits available) is a legal question related to damages. As discussed more fully below, damages are not an issue for the jury and are not relevant to their determination on Plaintiff's claim for Unreasonable Delay or Denial of Benefits. To the extent that Plaintiff argue that State Farm's act in "ignoring" her demand for such interest when evaluating her UIM claim constitutes evidence of its unreasonableness, such evidence is relevant under Rule 401. In *Peden v. State Farm, supra,* the Tenth Circuit ruled that a genuine issue of material fact existed "on the reasonableness of State Farm's initial refusal to pay anything for future noneconomic damages or future wage loss" in light of the fact that she had "provided State Farm with her college transcript, medical records and photographic

8

evidence to demonstrate" such damages. 841 F.3d at 894. The Tenth Circuit noted that the argument that State Farm "should have added at least some amount for prejudgment interest . . . bears potential merit, for the Colorado Supreme Court has held that prejudgment interest constitutes an element of damages for purposes of a similarly worded provision." *Id.* at FN.7 (citing *USAA v. Parker*, 200 P.3d at 358-59). The Court declined to consider Plaintiff's argument, however, as it was first argued in Plaintiff's Reply Brief and, thus, "Plaintiff was waived her appellate challenge involving State Farm's failure to consider prejudgment interest in the initial claims decision." *Id.* I agree with the Tenth Circuit that State Farm's alleged failure to consider Plaintiff's demand for prejudgment interest, at the time of its initial denial, has some relevance under Rule 401 to the determination of whether State Farm's valuation of her claim was reasonable.

Nonetheless, because the law is not settled as to whether she was entitled to such interest, I conclude that its minimal probative value is substantially outweighed by a danger of confusing the issues and, perhaps, misleading the jury pursuant to Rule 403. At the time State Farm initially adjusted and denied Plaintiff's UIM claim in February of 2014, the Colorado Supreme Court had decided *USAA v. Parker*, 200 P.3d at 357, but it "did not resolve the issue of whether an insurance company is required to pay prejudgment interest when evaluating and settling a claim with its insured under a UM or UIM policy." *Munoz v. Am. Family Mut., supra* (ruling that the insured was required to file lawsuit and proceed to judgment in order to be legally entitled to prejudgment interest on UIM benefits

under Colo. Rev. Stat. §13-21-101(1)).  The issue remains unresolved, as the Colorado Supreme Court has accepted *certiorari* on this question.  2017 WL 3868023 (Colo. Sept. 5, 2017).

Accordingly, I conclude that argument and evidence related to whether State Farm failed to adequately value Plaintiff's claim, by "ignoring" her request for pre-judgment interest, is not admissible pursuant to Rule 403, as the availability of such interest was not (and still is not) legally settled and therefore likely to confuse or mislead the jury which, in turn, substantially outweighs its relevance. *See U.S. v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)(trial courts have "considerable discretion in performing the Rule 403 balancing test").

## B.  Limitations on Plaintiff's Expert:

State Farm next argues that Plaintiff's expert, David Frangiamore, should not be allowed to testify that:  1) State Farm sent copies of Plaintiff's medical reports to the "National Claims Index" (as indicated in the report authored by Plaintiff's prior expert Thomas Corrigan) as inaccurate and it might improperly invite the jury to discuss irrelevant privacy issues; and 2) he reviewed the Tenth Circuit Opinion in this case when formulating his opinion.  State Farm also argues that it might challenge the scope of Mr. Frangiamore's expertise, after *voir dire*, on the basis that he is not familiar with Colorado law and insurance regulations.  *See Goebel v. Denver & Rio Grande*, 215 F.3d 1083, 1087 (10th Cir. 2000)(expert testimony is admissible only if it "both rests on a reliable foundation and is relevant to the task at hand").  Specifically, State Farm argues that Mr. Frangiamore is

unfamiliar with Colorado case law, jury instructions and Division of Insurance regulations.

I agree with Plaintiff, however, that State Farm's potential challenges to Mr. Frangiamore's specific opinions/testimony, or to his expertise, is "properly the subject of a Rule 702 motion." *See* Fed. R. Evid. 702. And, to the extent that Plaintiff may have specific Rule 702 challenges to Mr. Frangiamore's proffered testimony (either that State Farm sent copies of Plaintiff's medical reports to the "National Claims Index," or that he reviewed the Tenth Circuit Opinion in this case) or his qualifications (that he is not familiar or has no experience with Colorado law/insurance regulations), I defer ruling on those challenges at this time as any Rule 702 challenge should be made at time Mr. Frangiamore is offered as an expert witness at trial.

## C. Statutory Remedy Under §10-3-1116(1) :

State Farm next argues that the jury should be made aware of the statutory "penalty" that would be imposed if they find in favor of Plaintiff, based on the general public policy that juries should be made aware of the effect of their deliberative decisions. *See generally Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 362 (Colo. App. 2000)(a toxic tort action).

Plaintiff disagrees, and maintains that in Unreasonable Delay or Denial claims the law is that juries only determine whether the insurer acted reasonably – the determination and imposition of a statutory remedy is for the Court. *See Graham v. Zurich Am. Ins. Co.*, 296 P.3d 347, 350 (Colo. App. 2012)(the

11

determination of a statutory penalty is generally for the Court); *see also Toy v. Am. Family Mut. Ins. Co.*, 2014 WL 486173 (D. Colo. 2014).

The applicable statutory remedy is provided by Colorado Revised Statute §10-3-1116(1), which states that a first-party claimant "whose claim for payment of benefits has been unreasonably delayed or denied may bring an action . . . to recover reasonable attorney fees and court costs and two times the covered benefit." Thus, the issue or determination of that statutory remedy, as the sole damages available, will not be before the jury in this case as I have previously ruled the covered benefit is $350,000 and, thus, the amount of the statutory remedy is set; this is clearly a case in which the jury's only determination is whether State Farm acted reasonably or not in order to decide her claim. Therefore, I deny State Farm's request that the jury be informed of the amount that would be awarded to Plaintiff if she prevails. *Toy v. Am. Family, supra* (ruling that informing the jury of treble damages under §10-3-1116(1) "may tend to confuse or prejudice a jury into reducing its eventual award" and thereby frustrate the goal of deterring improper conduct and promoting private enforcement of the statute).

## D. Plaintiff's Witness Scott Krug:

Mr. Scott Krug, an employee of Mr. Doehling's law firm, is designated by Plaintiff as a fact witness. His affidavit (provided at summary judgment) indicates that he was a claims manager at Mr. Doehling's firm when he filled out an Injury Questionnaire for Plaintiff to submit to State Farm when seeking coverage of her medical expenses. On that form, he indicated that the purpose of the trip was

12

"Pleasure/Joyride." He avers that he did not intend the answer to that question address any assumption of the risk issues, or whether plaintiff knew the at-fault driver was intending to drive and/or was intoxicated. [Doc #53-8] State Farm argues that Mr. Krug cannot testify because he is an employee of Plaintiff's representing counsel.

Plaintiff contends that Mr. Krug's testimony is relevant and does not violated Rule 3.7 of the Colorado Rules of Professional Conduct because he is an employee/claims adjustor (not an attorney) for Plaintiff's law firm. As such, his testimony does not present an ethical conflict. Rule 3.7(a) provides, in relevant part, that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness ...".

The cases relating to Rule 3.7 of the Colorado Rules of Professional Conduct are generally postured as an opposing party's motion to disqualify a firm from providing representation when the firm's attorney would or could be called as a fact witness – they do not address the question of a lawyer's employee providing testimony. *Dawson v. Orkin Exterminating Co.*, 736 F. Supp. 1049, 1054 (D. Colo. 1990)(indicating that the Rule applies to lawyer testimony at trial, and is designed primarily to preclude the unseemly situation in which the lawyer must argue his own credibility to a jury); *see also Greenebaum-Mountain Mortgage Co. v. Pioneer Nat'l Title Ins. Co.*, 421 F.Supp. 1348, 1353-54 (D. Colo. 1976)(allowing the counsel's firm to continue representation); *Fed. Deposit Ins. Corp. v. Sierra Res., Inc.*, 682 F. Supp. 1167, 1170 (D. Colo. 1987)(holding that law firm was disqualified because a

member attorney would be testifying as an expert on behalf of a party).

The question here is whether an employee of a representing law firm should be allowed to provide factual testimony as to his intent when filling out a form for the firm's client to present to an opposing party. Under such circumstances, I agree with State Farm that Mr. Krug should not be allowed to testify as a fact witness on behalf of Plaintiff. *See generally Fognani v. Young*, 115 P.3d 1268, 1272 (Colo. 2005)(noting that "[t]he client's case is subject to criticism that it is being presented through the testimony of an obviously interested witness who on that account is subject to impeachment, and, of equal importance, placed in the unseemly position of arguing his own credibility to the jury")(quoting *Williams v. District Court, El Paso County*, 700 P.2d 549, 553 (Colo. 1985)).

Therefore, I conclude that while Mr. Krug's proffered testimony is relevant under Rule 401, it is inadmissible under Rule 403 in that the danger of unfair prejudice from the factual testimony of an employee of a representing law firm substantially outweighs the probative value of that evidence. Although Mr. Krug, as a non-attorney, is not governed by Rule 3.7, this is a case "where the Rules of Professional Conduct become intertwined with litigation and a potential ethical violation threatens to prejudice the fairness of the proceedings, a trial court may consider the issue not as a disciplinary matter but rather within the context of the litigation." *Mercantile Adjustment Bureau, L.L.C. v. Flood*, 16, 278 P.3d 348, 354 (Colo. 2012).

### E. State Farm's Police Reports:

State Farm next contends that the police reports related to the accident are admissible despite Plaintiff's objection that they constitute an "undisclosed expert opinion." State Farm argues that because the reports were in the insurance file and were used to make claim decisions, they are relevant to the reasonableness of its claims handling process. In addition, because they were recorded observations as part of regularly conducted activities of the police, they are admissible pursuant to Federal Rule of Evidence 803(6)(hearsay exception for regularly conducted activity).

Plaintiff agrees that the "single-page Colorado State Patrol Traffic Accident Report" obtained by State Farm prior to this litigation is admissible. She asserts, however, that police reports obtained *after* litigation was filed are not admissible for any and all purposes just because they are contained in State Farm's files, although she concedes that they "may be admissible to the extent that a claims adjustor relied upon them" when reviewing Plaintiff's claim after the case was filed. She appears to no longer argue that they were undisclosed opinions.

Plaintiff's argument acknowledges that the police reports obtained by State Farm after Plaintiff filed this lawsuit are admissible to the extent that they were used in the claim's handling process pursuant to my prior *in limine* ruling that evidence of State Farm's claim handling from the time Plaintiff filed this suit, through the time it paid her the full UIM benefits is relevant evidence. [Doc #111] The police reports used by State Farm to adjust/determine Plaintiff's claim, through

15

the time it was paid in full in May of 2015, are therefore relevant and admissible under Rule 401.

**F. Police Audio Record**:

State Farm next argues that an audio recording of the dispatchers and police officers that reported to the scene after the accident is relevant, under Rule 401, as it makes it more probable than not that Mr. Graf was "obviously intoxicated." And, as such, the evidence goes to Plaintiff's credibility regarding her claim that she did not know that he was drunk at the time of the accident.

Plaintiff contends that the recording is not relevant in that it does not "contain obviousness of Mr. Graf's intoxication." Plaintiff argues that the recording does not provide "helpful information" about Mr. Graf's intoxication – except that the dispatcher noted the police response was for "one vehicle crash, driver was intoxicated" and that at some point during transport Mr. Graf needed to vomit.

The parties disagree as to the degree relevancy provided by the audio recording, and its probative value to the determination of whether Plaintiff was aware of Mr. Graf's intoxication at the time of the accident. Because this determination necessitates my review of the recording, I defer ruling on this matter until the potential evidence is offered at trial.

**G. Plaintiff's Amount of State Farm's Loss Reserve**:

Finally, State Farm argues that evidence of its loss reserve during the claims process is not admissible because the amount of the reserve does not constitute evidence that it believed the claim is worth a certain amount. *Silva v. Basin*

*Western, Inc.*, 47 P.3d 1184, 1189 (Colo. 2002)(noting that "a particular reserve amount does not necessarily reflect the insurer's valuation of a particular claim"). A loss reserve is the amount of money set aside by the insurer to cover future expenses, losses, claims or liability – the initial amount is computer generated, then the amount is adjusted as appropriate during the claim process. State Farm asks that I exclude such evidence at trial.

In response, Plaintiff concedes that Colorado case law generally holds that an insurer's reserves are not reasonably calculated to lead to the discovery of admissible evidence. *Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657-58 (Colo. 2012)(addressing a first-party UIM claim). However, the Colorado Supreme Court has ruled that such evidence "might be relevant and reasonably calculated to lead to admissible evidence when a first-party plaintiff sues his or her insurance company for bad faith" as "evidence of reserves and settlement authority could shed light on whether the insurance company adjusted a claim in good faith, or promptly investigated, assessed, or settled an underlying claim." *Id.* at 657-58 (addressing the discoverability of an insurer's reserves and its settlement authority, as well as its liability assessments and fault evaluations)(citing *Silva v. State Farm*, *supra*, 47 P.3d at 1193); *see also Toy v. Am. Family Mut. Ins. Co.,* 2014 WL 485962 (D. Colo. Feb. 6, 2014)(noting that the Court in *Sunahara v. State Farm* "explicitly declined to extend its holding to situations where, as here, an insured is suing an insurer for bad faith and the insurer's own conduct is placed at issue" ); *Colorado Mills, LLC v. Philadelphia Indemnity Ins. Co.*, 2013 WL 1340649 (D. Colo. Apr. 2,

2013)(unpublished)(allowing the discovery of reserve information in case for breach of the covenant of good faith and fair dealing/insurer bad faith with respect to the insurer's denial of its first-party claim).

Although this case is for UIM benefits, those benefits are no longer in dispute since State Farm paid Plaintiff the full amount of the available benefits after this lawsuit was filed and Plaintiff's breach of contract claims have been dismissed. Rather, at issue is whether State Farm acted unreasonably when handling Plaintiff's UIM claim. In this case State Farm is in the position of defending its own actions – as in bath faith or declaratory judgment actions – and therefore its loss reserve (and how that reserve changed over the course of their investigation) may have some probative value in assessing the adequacy of its investigation and valuation of Plaintiff's UIM claim. *Peden v. State Farm, supra,* 841 F.3d 888-89. Since the reasonableness of State Farm's decisions when handling Plaintiff's claim is the central issue in this case, such findings might be generally reflected in its reserve determinations. *See generally Seabron v. Am. Family Mut. Ins. Co.,* 862 F. Supp. 2d 1149, 1158 (D. Colo. 2012)(noting that "evidence of the reserves and settlement authority in this case and over the life of the claim . . . . would provide evidence of whether Defendants' conduct was reasonable or unreasonable"). Therefore, I conclude that evidence of State Farm's loss reserve might have some relevancy to the issue of State Farm's reasonableness in handling Plaintiff's claim under Rule 401.

However, I find that evidence of the amount of State Farm's loss reserve should not be admitted as the danger of unfair prejudice outweighs its potential relevancy to the issue of its reasonableness. While evidence of State Farm's liability assessments and fault evaluations during the evaluation of her claim is relevant and presumptively admissible – see *Peden v. State Farm, supra,* 841 F.3d 892-93 (finding issues of fact in State Farm's reasonableness in handling Plaintiff's claim based on its 15% discount for assumption of risk and a valuation at less than 43% of her itemized damages) – I conclude that the amount State Farm set aside on her claim is not admissible under Rule 403. Admitting evidence of an insurer's loss reserves could lead the jury to assume that amount was an internal valuation of the claim and/or an assessment of it liability for settlement purposes. *Silva v. Basin W., supra,* 47 P.3d at 1189 (noting the "common misconception" that an insurer's loss reserves are the same as settlement authority when, in actuality, "[t]he main purpose of a loss reserve is to comply with statutory requirements and to reflect, as accurately as possible, the insured's *potential liability*")(emphasis in original), (quoting *Lipton v. Superior Court*, 56 Cal.Rptr.2d 341, 348-49 (1996)). Because a loss reserve does not reflect an admission by the insurance company that a claim is worth a particular amount of money, they have limited usefulness as valuations of a claim at trial, and instead contain a high possibility of unfair prejudice against an insurer. See *Silva v. Basin W., supra,* 47 P.3d at 1189; *Seabron v. Am. Family, supra,* 862 F. Supp.2d at 1158 (finding that an insurer's loss reserve was discoverable based on the broad federal discovery rules). As a result, I conclude

that the amount of State Farm's loss reserve in this case is not admissible as the danger of unfair prejudice outweighs any potential probative value under Rule 403.

ACCORDINGLY, I rule as follows with regard to the potential pre-trial issues raised in the parties' Trial Briefs [**Docs #156 & #153**] :

1)  State Farm may not argue that Plaintiff was required to meet a burden or level of proof when filing her claim for UIM benefits, in order to trigger State Farm's duty to investigate, evaluate and pay her claim.

2)  Plaintiff's alleged non-cooperation, under the terms of the insurance policy, does not act as an affirmative defense to Plaintiff's Unreasonable Delay or Denial claim, although such evidence may be relevant and probative of the reasonableness of State Farm's actions in its investigation and handling/paying Plaintiff's claim.

3) Argument and evidence related to whether State Farm adequately valued Plaintiff's claim by "ignoring" her request for pre-judgment interest during the claims process is not admissible, pursuant to Rule 403.

4) I defer ruling on State Farm's Rule 702 challenges to the specific testimony and qualifications of Plaintiff's expert, David Frangiamore, until he is offered as an expert witness at trial.

5) Because the amount of the statutory remedy, as the sole damages

available on Plaintiff's Unreasonable Delay or Denial claim, will not be decided by the jury, it will not be informed or instructed as to the amount that would be awarded to Plaintiff if she prevails.

6) Scott Krug, Plaintiff's proffered witness, will not be allowed to testify as a fact witness pursuant to Rule 403.

7) Police reports obtained by State Farm after Plaintiff filed this lawsuit through the time it was paid in full in May of 2015, are admissible to the extent that they were used by State Farm to adjust/determine Plaintiff's claim.

8) I defer ruling on the relevancy of the audio recording of police personnel responding to the scene of the accident, under Rule 401, until after I have reviewed the recording at the time it is offered at trial.

9) While State Farm's loss reserve activity during the claims process may relevant to the issue of its reasonableness when evaluating Plaintiff's UIM claim, under Rule 401, it is not admissible at trial as that relevance is outweighed by the danger of unfair prejudice under Rule 403.

Dated: July  20 , 2018 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE